(107 So. 891)

No. 25388.

## H. P. RICHARD & SONS v. DIRECTOR GENERAL OF RAILROADS.

(March 1, 1926. Rehearing Denied March 29, 1926.)

*(Syllabus by Editorial Staff.)*

1. Carriers ☞125½ — Want of timely demand for damages in shipment is no defense, where shipping contract did not require notice for loss complained of.

In action for damages to cotton during shipment, want of timely demand is no defense, where shipping contract did not require notice or demand for loss complained of.

2. Pleading ☞395 — Proof must correspond with allegations, and recovery on cause of action not alleged cannot be had, where timely objection is made.

Proof must correspond with allegations, and recovery cannot be had on cause of action not alleged, where objection to evidence on that ground is timely made.

3. Pleading ☞34(1)—Petition must be construed as a whole.

Petition must be construed as a whole, and no single allegation can be taken and deemed to be sole and restricted cause of complaint.

4. Carriers ☞131 — Allegations that cotton was in sound condition when delivered to carrier, and damaged when delivered after unusual delay, held sufficient to admit proof of damages caused by long delay, placing on carrier burden of showing loss was not due to its negligence (Civ. Code, art. 2754).

In action for damages to cotton during shipment, allegations that cotton, at time of delivery to carrier, was sound, and was in damaged condition when delivered after unusual delay, *held* sufficient to admit proof showing damage due to long delay in moving cotton and exposure to rains after placed in possession of carrier, and, under Civ. Code, art. 2754, to place burden on carrier of proving that loss was not due to its negligence.

5. Carriers ☞134—Evidence held to show that cotton, damaged during shipment, was in good condition when delivered to carrier.

In action against carrier to recover damages to cotton during shipment, evidence *held* to show that cotton was in good condition when delivered to carrier.

6. Carriers ☞135—Shipper can recover for damaged cotton same price which he received for undamaged cotton on proof of damage during shipment.

Shipper, on proof that cotton was damaged because of negligence of carrier during shipment, can recover for amount of damaged cotton same price for which he sold undamaged part, less amount for which such damaged cotton was sold.

7. Carriers ☞135.

Cotton, damaged when delivered to carrier for shipment, will not be included in amount of recovery against carrier for damage caused by unreasonable delay in shipment.

On Application for Rehearing.

8. Carriers ☞135—Legal interest on amount of recovery against Director General of Railroads for damage to shipment was properly allowed from date of judicial demand (Act Cong. March 21, 1918, § 10 [U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115¾]]; Civ. Code, art. 1938; Act No. 206 of 1916).

Under Act Cong. March 21, 1918, § 10 (U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919,

§ 3115¾j), providing that carriers, while under federal control, should be subject to all laws and liabilities as common carriers, and Civ. Code, art. 1938, Act No. 206 of 1916, legal interest on recovery against Director General of Railroads for damages to shipment was properly allowable from time of judicial demand.

Appeal from Eighteenth Judicial District Court, Parish of Acadia; William Campbell, Judge.

Suit by H. P. Richard & Sons against Walker D. Hines, as Director General of Railroads; James C. Davis and Andrew W. Mellon being later respectively substituted as party defendant on their succeeding to position of Director General of Railroads. Judgment for defendant, and plaintiff appeals. Judgment set aside and rendered for plaintiff.

Gremillion & Smith, of Crowley, for appellant.

Spencer, Gidiere, Phelps & Dunbar, of New Orleans, Peterman, Dear & Peterman, of Alexandria, and C. B. De Bellevue, of Crowley, for appellee.

THOMPSON, J. This is a suit for damages growing out of a shipment of a lot of cotton over the Texas & Pacific Railway from Church Point to New Orleans.

The lot comprised 521 bales and was delivered to the carrier in different quantities and at different times beginning with a shipment on October 9 and ending with a shipment on December 23, 1918.

It is alleged substantially that the cotton was delivered to the carrier in good condition and when delivered to the consignee in New Orleans that 251 bales of said cotton were so water soaked and so badly damaged that the said number of bales had to be sent to the pickery to be repacked and reconditioned and the damaged cotton separated from that undamaged.

That, of the 251 bales, 5,053 pounds of rotten and damaged cotton was picked at the scales where the said cotton was weighed and that 11,150 pounds of rotten and damaged cotton was picked at the pickeries and is commonly known as "pickery pickings."

For this amount of damaged cotton, judgment is prayed for at the rate of 30 cents per pound, being the price plaintiff would have received had said cotton not been damaged.

It is also claimed that 4 of the 62 bales shipped December 14 and 23, 1918, were so completely damaged and rotten that the same were rejected and that the plaintiff had to refund to the consignee the amount he had drawn against said cotton, which was $510.93.

A further claim is made of $502, being the amount which the plaintiff had to pay in pickery charges and for extra bagging in repacking the said cotton.

The defense is a general denial of any negligence in the handling and transportation of the cotton and a denial of the alleged damaged condition of the said cotton when it reached New Orleans; said denial being based on lack of information to the contrary. The plea is also made that the plaintiff cannot recover in this suit in any event, for the reason that plaintiff failed and neglected to claim or demand said loss or damage within the time or in the manner required by the terms of the shipping contract.

After a trial there was judgment rejecting the demand of the plaintiff in toto.

[1] The defense of want of timely demand we presume has been abandoned, since it is not referred to in counsel's brief. However, there is no merit in it, for the shipping contract does not require notice or demand where the loss or damage complained of is due to delay or damage while being loaded or unloaded, or damaged in transit, as a condition precedent to recovery.

In the course of the trial in the lower court the defendant objected to any evidence of damage or injury or of negligence of the carrier, other than that arising from the rotten

and leaky condition of the roof of the cars; it being the contention of defendant that such was the only cause of complaint made in the petition.

The defense that the demand of the plaintiff as presented by the evidence is entirely ultra petitionem is really the only serious one made in counsel's brief.

[2] This defense is very technical, but, of course, if it was, as a matter of fact, true that the only cause of action alleged on was the bad condition of the cars, we would be compelled to sustain the defense on the principle that the proof must correspond with the allegations and that a party cannot recover on a cause of action not alleged where the objection to the evidence on that ground is timely made.

The petition in this case does allege as one of the causes of damage to the cotton that the roofs of the cars were leaky; still that was not alleged as the exclusive cause of injury and damage to the cotton.

[3] The petition must be construed and considered as a whole. No single allegation can be taken and deemed to be the sole and restricted cause of complaint.

The allegations of the petition show that the cotton when delivered to and accepted by the railroad company was sound and in good condition; that the transportation of said cotton, a distance of only 160 miles from point of shipment to place of delivery, was usually from 3 to 5 days, whereas the transportation of this cotton was delayed by the railroad company from 15 to 55 days; and that, when the cotton did reach New Orleans and was delivered, it was found to be damaged to the extent and to the amount as already stated.

[4] We are of the opinion that these allegations were sufficient to admit of any proof going to show any cause of damage due to or occasioned by the long delay of moving the cotton and its exposure to the rains after the cotton was placed in the possession of the railway company, and to throw upon the defendant company the burden of proving that the loss or damage to the cotton was not due to any negligence of the company, but was occasioned by accident or some uncontrollable event.

Article 2754, Civil Code, declares that carriers are liable for the loss or damage of the things intrusted to their care, unless they can prove that such loss or damage has been occasioned by accidental or uncontrollable events.

And in the case of National Rice Milling Co. v. New Orleans & N. E. R. Co., 61 So. 708, 132 La. 61, Ann. Cas. 1914D, 1099, this court held, quoting from the syllabus:

"According to law and jurisprudence of this state, to be relieved from liability the carrier must prove that the loss or damage has been occasioned by accidental or uncontrollable event, and this involves the proposition that the carrier must prove that it was free from fault."

[5] The evidence in our opinion is conclusive that the cotton was in good condition when it was delivered to the carrier.

And this was so acknowledged by the carrier when the bills of lading were issued, except as to 77 bales which were noted on the bill of lading as being wet. The cotton was ginned and pressed at a gin some 7 blocks away from the cotton platform of defendant company. The cotton, when ginned and pressed, was stored in a warehouse at the gin and was not exposed to the rain until it was delivered to the railroad company. This fact is testified to by several witnesses. The cotton platform of the railroad company was not covered and the cotton was left there exposed to the rain for quite a while before it was loaded into the cars. The fall season of 1918 was extremely wet and the defendant attempted to show and did prove that quite a lot of cotton had been damaged on account of the rains before it was shipped, but this evidence in no way contradicts the number of

witnesses who testified that the plaintiff's cotton was kept out of the weather and was not damaged or wet when delivered to the carrier.

It is also clearly established by the evidence that an unusual and unaccountable delay was had in the transportation of the cotton from the point of shipment to the point of destination; this delay averaging from 8 to some 40 or 50 days.

The defendant permitted the cotton to remain on the open platform and exposed to the rain for such a length of time that the plaintiff had to call on the agent and urge him to ship the cotton and get it out of the rain.

The amount and extent to which the cotton was damaged when it was delivered in New Orleans is clearly established by the statements filed in the evidence and the testimony of the representatives of the consignee and of the men in charge of the pickery. This testimony very clearly shows that 5,055 pounds of damaged cotton was picked from 251 bales at the scales when the cotton was weighed and is known as "scale pickings," and that 11,150 pounds was picked from said cotton when it was sent to the pickeries, and this is known as "pickery pickings," and which was separate and independent from and in addition to the scale pickings.

[6] The evidence also shows that the plaintiff received from the undamaged part of his cotton an average price of 30 cents per pound. The plaintiff is therefore entitled to that price for the aggregate number of pounds of damaged cotton, less the amount for which said damaged cotton was sold, and less the amount hereafter considered.

It appears, as already stated, that 77 bales were damaged when received by the railroad company.

[7] Two of the plaintiff's witnesses first testified that 77 bales were not included in the list for which damage is claimed, but

160 LA.—33

subsequently corrected their statements. This particular cotton was included in the demand, and, as it was damaged when delivered to the carrier, we do not think that the latter should be held liable therefor. The damage to these 77 bales was 4,297 pounds, as shown by transcript pages 37 and 38, and this should be deducted from the total of 16,203 pounds, which would leave 11,906 pounds, for which plaintiff should have judgment at 30 cents per pound.

The plaintiff admits in its brief that the defendant should be credited with $1,069.78, for which the damaged cotton was sold. From this credit, however, should be deducted the expense of picking and repairing amounting to $188.56. The balance of the claim for picking and repairing the cotton and in placing it in proper condition for marketing is not sufficiently established by the evidence to justify a judgment in plaintiff's favor.

It appears that 4 bales of the lot of cotton were so badly damaged as to be worthless and were rejected by the consignee.

These four bales were worth $510.93 and were not included in the amount already considered.

The plaintiff did receive a credit, however, of $16.37 for the cotton picked from the 4 bales, and this amount should be deducted from the amount allowed as the price of said 4 bales.

After the suit was filed, James C. Davis succeeded Walker D. Hines as Director General of Railroads and was substituted as party defendant. And in this court Andrew W. Mellon has been substituted as defendant; he having succeeded James C. Davis.

For the reasons assigned, the judgment appealed from is set aside, and it is now ordered and decreed that there be judgment in favor of the plaintiff and against the Director General of Railroads, representing the Texas & Pacific Railway Company, for the

sum of $4,066.36, with legal interest from judicial demand, to wit, October 4, 1919, till paid, less a credit of $881.22 as of date of judicial demand.

### On Application for Rehearing.

PER CURIAM. In an application for a rehearing, defendant complains that we have allowed plaintiff, on the amount awarded him, legal interest from judicial demand, and calls our attention to the fact that Division C of this court did not allow interest on an award against the Director General in Aymond v. Western Union Telegraph Co. et al., 91 So. 671, 151 La. 184, saying:

"Of course, a judgment against the Director General of Railroads is a judgment against the United States, and therefore bears no interest, unless Congress shall allow therefor."

[8] However, it may be said that Congress has made the necessary provision, for by Act March 21, 1918, § 10 (40 Stat. at Large, 451, 456 [U. S. Comp. St. 1918, U. S. Comp. St. Ann. Supp. 1919, § 3115¾j]), it is provided:

"That carriers while under federal control shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law, except in so far as may be inconsistent with the provisions of this act or any other act applicable to such federal control or with any order of the President."

Since there is nothing in conflict with the allowance of legal interest from judicial demand, until paid, on a claim arising ex contractu, or even ex delicto, against the Director General, and since the laws of this state allow legal interest on all debts from the day they become due (C. C. art. 1938), and even on claims for damages, arising ex delicto, from judicial demand (Act 206 of 1916), it was not error for the court in this case, in view of the provision, from the act of Congress, above quoted, to allow legal interest from judicial demand, and the ruling of the court, in the Aymond Case, that such interest is not allowable against the Director General, is erroneous.

We have considered the remaining complaints made in the application for a rehearing herein. After so considering them, we have not found them well grounded.

Rehearing refused.