GRENNON v. NEW ORLEANS PUBLIC
SERVICE, INC.

---

(July 20, 1931.   Opinion and Decree.)
(October 19, 1931.   Rehearing Refused.)
(November 30, 1931.   Writ of Certiorari
and Review Refused by Supreme Court.)

---

Milner & Porteous and P. M. Milner, of New Orleans, attorneys for plaintiff in rule, appellee.

Ivy G. Kittredge, of New Orleans, attorney for defendant in rule, appellant.

DUNBAR, Judge ad hoc. The plaintiff, Joseph Grennon, obtained a judgment against the New Orleans Public Service, Inc., for $13,500 in the district court, and on appeal to this court the judgment was amended by reducing the judgment of the district court to $7,500, and, as thus amended, the judgment was affirmed. No interest was · prayed for and no interest was given in either the judgment of the district court or the judgment of the Court of Appeal. The case is reported in 10 La. App. page 641, 120 So. 801. The defendant corporation paid the principal amount of the judgment and costs, and receipt was given for the amount paid. No interest was embodied in the payment and no receipt given for interest, nor was there any protest at the time of receipt of payment by the plaintiff that interest had not been paid. At the time the payment of the amount of the judgment was made and accepted, plaintiff states that he was ignorant of the existence of Act 206 of 1916, which he claims creates in his favor a legal right to interest on the judgment from judicial demand. After counsel for plaintiff became aware of the existence of this act, he made demand on the defendant to pay interest on the judgment on the ground that under Act 206 of 1916 legal interest from date of judicial demand automatically *attaches* to the judgment. The demand was refused, and a rule for payment of interest on the judgment was taken,

and the rule was made absolute. The defendant, New Orleans Public Service, Inc., has appealed from this judgment.

Counsel for defendant-appellant contends that the judgment of the district court is erroneous on two grounds, to-wit: (1) That Act 206 of 1916, properly interpreted, should be construed so as to prevent plaintiff from recovering interest, because he failed to pray for it in his petition, and because interest was not mentioned in the judgment; and (2) the acceptance by plaintiff from defendant of the full amount of the principal due on the judgment in payment of said judgment, without reservation or protest, amounted to a waiver of interest.

Act 206 of 1916 reads as follows:

"Be It Enacted, by the General Assembly of the State of Louisiana, that legal interest *shall, hereafter, attach* from date of judicial demand, on all judgments, sounding in damages, 'ex delicto,' which may be rendered by any of the courts of this State. (Italics ours.)

"Be It Further Enacted, etc., that all laws in conflict with the provisions of this act are hereby repealed and this act shall take effect from date of the passage thereof."

The · Legislature could not have selected stronger or more significant language than the words "shall attach" to indicate an intention that interest automatically becomes due and payable on a judgment sounding in damages from the date of judicial demand, irrespective of whether or not it is prayed for in the petition or mentioned in the judgment. The words "shall attach," as defined in the cases and dictionary (see Webster's Dictionary and Words and Phrases, 1st, 2nd and 3rd Series, Attach), mean that interest becomes automatically "annexed to," "connected with," "joined to," or "made a part of" the judg-

ment, and the inference is inescapable from the use of these words alone, without any subsequent qualifying or restrictive language, that interest need not be prayed for or mentioned in the judgment to entitle a successful litigant in an action ex delicto to claim it. In order to counteract and qualify the plain meaning of the words "shall attach," and the logical and necessary inference and meaning flowing from the use of these words, the Legislature would have had to specifically and expressly provide that, although "interest shall attach," it will, nevertheless, be lost or waived in case of a failure to claim it. No such exception is provided for in the Act of 1916, and such an exception (which is inconsistent with the plain meaning of the words "shall attach") cannot be inferred or, implied by a court and read into the law without doing violence to the plain meaning and intendment of the words used in the act, which, in the absence of ambiguity, are the real test of legislative intent.

Article 13 of the Louisiana Civil Code, under chapter 4 relative to the application and construction of laws, provides:

"*Spirit and Text.* When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit."

It is also elementary that unless there is uncertainty or ambiguity in the words of a law, courts are not at liberty to consider or compare laws in pari materia. See article 17 of the Louisiana Civil Code.

In Webster's Dictionary, already referred to, after defining the word "attach" in general terms along the lines we have indicated, Cooley is referred to in connection with the legal meaning of the word, who defines it from a legal standpoint as follows:

"To come into legal operation in connection with anything; to vest; as, dower will attach."

A court should not lightly assume, and, under the guise of statutory interpretation, read into a statute, which in plain and unambiguous language gives a right without qualification or reserve, a presumption of a waiver or loss of such right (based on a single fact or circumstance such as a failure to pray for interest as in the instant case), except in an extreme case and for the most convincing reasons.

Counsel for defendant, evidently proceeding on the theory that the language of Act 206 of 1916 is ambiguous, argues that, as a matter of reason and analogy, the Act of 1916 should be interpreted as establishing a rule similar to the rule announced in the articles of the Code of Practice in relation to the allowance of interest on debts, which is waived if not prayed for in accordance with the express and detailed provisions of the Code of Practice; or to state the argument of counsel for defendant in another way and with reference to the articles of the Code in relation to costs, he contends that the Act of 1916, properly interpreted, does not contemplate that interest in actions ex delicto *shall attach* and be recoverable, in the same way as the costs of the suit are recoverable, as provided for in the Code of Practice.

In the first place, unless the words *shall attach* are ambiguous under the well-settled rules of statutory interpretation (Articles of the Civil Code arts. 13 to 18, inclusive), we have no right to consider the language used or the principle announced in the articles of the Code of Practice, referred to by counsel for plaintiff, as an aid in interpreting and determining the meaning and intent of Act 206 of 1916. If we disregard, however, the difficulty in finding

uncertainty and ambiguity in the words and language of the Act of 1916 for the moment, and consider the articles of the Code referred to by counsel, we find they are not, upon analysis, helpful in the interpretation of the language of the act, but, on the contrary, support plaintiff's theory of the meaning and effect of the act. The language used in the articles of the Code of Practice in relation to interest on debts and the costs of suit is very specific and detailed in describing the conditions under which interest and costs are payable and when interest is waived, and the phraseology used in the Code of Practice is substantially different from that used in the Act of 1916.

Article 554 of the Code of Practice reads as follows:

"Interest at the rate of five per cent shall be *allowed on all debts* from the time they become due, unless otherwise stipulated." (Italics ours.)

Article 553 of the Code of Practice reads as follows:

"Interest shall *not* be *allowed* by the judgment, *unless* the same have been *expressly claimed*, and then only in cases in which the law permits such interests to be stipulated." (Italics ours.)

Article 157 of the Code of Practice reads as follows:

"If, in an action of debt, the plaintiff fail to claim the interest due to him, or to amend his petition, in order to include it, he *cannot, after judgment, demand* such *interest* by another action; he shall be considered as having remitted it.

"But, as relates to the costs of the suit, it is not required that they should have been claimed in the petition or answer, in order to recover them; they are due to him in favor of whom the judgment has been rendered, even if nothing is said on the subject in the judgment." (Italics ours.)

Article 549 of the Code of Practice reads as follows:

"In every case the *costs* shall be *paid by the party cast*, except where compensation has been allowed, or real tenders made, as heretofore provided by this Code.

"All appellate courts of the State shall have the power to tax the costs of the lower or appellate court or any part thereof, against any party to the suit, as in its judgment may be deemed equitable." (Italics ours.)

Article 551 of the Code of Practice reads as follows:

"If the court have not decreed in their judgment that the party cast should pay the *costs*, the same *are* nevertheless *due to the party in whose favor the judgment* had been given; and such party shall be entitled to have the same taxed, on execution of the judgment." (Italics ours.)

It should be particularly noted that after stating in article 554 that "interest at the rate of five per cent shall be allowed on all debts from the time they become due," which language in itself, because of the use of the word "allowed," inferentially indicates that interest must be prayed for, the Code of Practice goes further and specifically provides in article 157, that "if, in an action of debt, the plaintiff fail to claim the interest due to him, or to amend his petition, in order to include it, he cannot, after judgment, demand such interest by another action; he shall be considered as having remitted it," which indicates that the Legislature felt it necessary to specifically and expressly provide for a waiver of interest in the case of a failure to claim it in the petition, in order to qualify the language previously used and to prevent the natural and reasonable inference from the use of such language, that interest would be allowed, irrespective of whether it was claimed or not.

Furthermore, the Legislature again, in

article 553 of the Code of Practice, reiterated the qualification and exception already referred to and again pointed out that interest would not be *allowed* by the judgment unless prayed for, in the following definite language (see article 553, Code of Practice):

"Interest shall not be allowed by the judgment, unless the same have been expressly claimed, and then only in cases in which the law permits such interests to be stipulated."

A study and analysis of articles 554, 553, 157, and 551 of the Code of Practice reveal, therefore, that the language used in the articles of the Code of Practice is essentially different from the language used in Act 206 of 1916, and, therefore, cannot properly aid us under well-settled principles of statutory construction in the literal interpretation of the language of the Act of 1916. The comparison further emphasizes the significant fact that the Legislature used the words "shall attach," which are clear and unambiguous in the Act of 1916, rather than the weaker and more ambiguous word "allowed" previously used in the Code of Practice in relation to interest on debts, and finally the comparison reveals that the Legislature seems to have deliberately and intentionally omitted to provide specifically in the Act of 1916 (as was done in the Code of Practice articles governing interest on debts) that a failure to pray for interest would be considered as a conclusive presumption that interest had been waived. In the light of the comparison and considerations we have outlined, it would seem to be more reasonable to assume that the Legislature intended to establish a different rule in the case of interest in actions ex delicto than in the case of interest on debts.

The most that can be said, after reading the articles of the Code of Practice referred to above, is that, aside from any question of literal interpretation or comparison of the language used, it is only reasonable to assume that the Legislature, as a matter of analogy and logical policy, must have intended to deal with interest on judgments sounding in damages in the same way as it had previously dealt with interest on ordinary debts, and accordingly the Legislature contemplated that in both cases interest would be conclusively deemed to have been waived unless prayed for or mentioned in the judgment. Such a presumed intention on the part of the Legislature, although logical and reasonable, as a matter of policy and equity, should not be arbitrarily assumed by a court when the Legislature seems to have indicated a contrary intent by the use of plain and unambiguous language. Furthermore, the Legislature has given actions ex delicto preference as a matter of procedure and at other times shown a desire to favor such suits, and a presumption that the Legislature did not intend to discriminate and treat interest in the case of actions ex delicto different from interest in the case of actions on debts is to say the least difficult to support, as a matter of legislative history.

However much, therefore, we may feel that, as a matter of equity and logic, there should not be a discrimination in favor of actions ex delicto or a different rule applicable to interest on claims and judgments sounding in contract, and claims and judgments sounding in tort, and though we may feel that the Legislature should not be presumed, as a matter of fairness and reason, to have intended such an illogical and unfair result, we are bound, in the performance of our judicial functions, to find the legislative intent from the language

used by the Legislature, and we are not at liberty to inquire into and consider the wisdom of legislative policy and the analogy of similar laws and collateral matters unless there is uncertainty and ambiguity in the language used by the Legislature requiring such an inquiry as an aid in arriving at the real meaning and intent of an ambiguous statute. .

The conclusion we have reached as to the meaning and intent of the Act of 1916 is in accord with our previous decision involving this same question in the case of Webb v. Lambert, 14 La. App. page 149, 129 So. 200. In that case we reversed the judgment of the lower court and gave judgment in favor of Webb and against F. L. Lambert and Frank Moroy in the sum of $1,200.00. The judgment was silent as to interest, and the attorneys for the plaintiff applied for a rehearing and asked that the judgment be amended so as to allow interest from judicial demand. In refusing the request this court said:

"We are asked to amend our decree so as to allow interest from judicial demand. In view of the phraseology of Act No. 206 of 1916, the amendment asked for is unnecessary."

The quotations from Caldwell v. City of Shreveport, 150 La. 465, 97 So. 763; Powe et al. v. Railroad Co., 7 La. App. page 55; O'Neil v. Railroad Co., 5 La. App. 94; Ventrilla v. Tortorice, 160 La. 516, 107 So. 390; Richard & Sons v. Director General of Railroads, 160 La. 1019, 107 So. 891; Dejean v. Louisiana W. R. Co., 167 La. 111, 118 So. 822; Gallagher v. Louque, 169 La. 362, 125 So. 272; and Southern Surety Co. v. Railroad Co., 6 La. App. 575, 577, cited by counsel for defendant, discuss only the time when interest begins to run under the Act of 1916, and the cases are not helpful in connection with the solution of the problem involved in this case, because a different issue was involved in each of the cases, and the language quoted was not used by the court in contemplation of the problem involved in the present case.

Counsel for defendant argues, however, that even if interest attaches and automatically becomes a part of a judgment sounding in damages from date of judicial demand, irrespective of whether it has been prayed for or mentioned in the judgment within the meaning and intent of Act 206 of 1916, nevertheless, the payment of the full amount of the judgment by defendant and the acceptance of this payment without protest or reservation by the plaintiff operates as a waiver or release of the interest on the part of the plaintiff. This contention that there was an implied waiver in the instant case presents very interesting and troublesome questions as to whether the rule in Louisiana is different from the common-law rule in relation to the necessity for a *consideration* to support a waiver of interest admittedly due.

In the first place, it must be remembered that in the case under consideration there were no circumstances of doubt or uncertainty in the minds of the parties at the time of the payment and its acceptance, and no dispute or controversy as to the amount due, and, therefore, the payment of the judgment was in no sense a *compromise* or an *accord and satisfaction*. It is not contended and could not be contended, therefore, that the principles of law in relation to *compromise* or *accord and satisfaction* apply. The evidence is clear that defendant sent a check for the amount of the judgment and plaintiff acknowledged receipt of the amount sent him without comment. The plaintiff was unaware at the time of the existence of Act 206 of 1916, and when this act was called to his attention he immediately took the position that the full amount due him as a matter of law had not been paid.

It seems to be a well-established and ancient rule of the common law that the payment by a debtor of part of what he owes, at the place where the debt is due in the medium of payment which was due, and at or after maturity of the debt, is not valid consideration for either an express promise or an implied waiver of the balance due, because the debtor incurs no detriment by paying part of what he owes and is legally bound to pay, and a creditor obtains no legal benefit by receiving it. This situation most commonly arises when a debtor pays part of a liquidated debt in return for the creditor's agreement that the debt shall be fully satisfied, and such an agreement on the part of the creditor, it is held, needs for its support other consideration besides the mere part payment. See Williston on Contracts, Vol. 1, sec. 120 and the numerous cases cited.

Applying the rule stated above, the common-law courts universally recognize the right to recover interest after the payment of the principal debt, where the interest was expressly provided for by the terms of the contract, because under such circumstances the interest becomes an *integral* part of the debt. In this class of cases it is said:

"There would be no more reason for holding that the payment of the original principal extinguished the claim for interest than that a part payment of such principal destroyed the right to the remainder." See Note 40 L. R. A. (N. S.) page 588; Bennett v. Federal Coal & Coke Co., 70 W. Va. 456, 74 S. E. 418, 420, 40 L. R. A. (N. S.) 588, Ann. Cas. 1913E, 578, and Note in Ann. Cas. 1912B, page 1333.

On the other hand, it seems to be equally well recognized at common law that if interest is not expressly stipulated for in a contract, but on the contrary is allowed merely by way of damages for the wrongful detention of money, or for neglect to pay promptly, it is a mere *incident* of the debt, which fails when the debt itself is extinguished, and, in such a case, if the debt is paid, there can be no recovery afterward for the interest which might have been collected. Davis v. Harrington, 160 Mass. 278, 35 N. E. 771; 22 Cyc. 1572; Note in Ann. Cas. 1913E, page 582. Where, however, the obligation is one that by statute bears interest, as in the case under discussion, some common-law courts regard this as an equivalent of contractual interest, and therefore allow a recovery, even though the principal sum has been paid; while other courts regard it in the nature of damages and refuse recovery after the payment of the principal sum. See Note 40 L. R. A. (N. S.) page 592; Devlin v. New York, 131 N. Y. 123, 30 N. E. 45; Hobbs v. United States, 19 Ct. Cl. 220; Ludington v. Miller, 38 N. Y. Super Ct. 478; Brady v. New York, 14 App. Div. 152, 43 N. Y. S. 452.

It is not necessary, however, for us to decide whether the interest given by the Act of 1916 is to be treated in the same way as contractual interest is treated in the common-law cases referred to above, or whether it should be analogized to interest in the way of damages. Article 2925 of the Louisiana Revised Civil Code seems to establish in Louisiana a general and comprehensive rule with reference to the waiver of interest, and the language of this article, which is unqualified, indicates that the distinction established by the common-law cases we have referred to is not recognized or applied in Louisiana. Article 2925 of the Code reads as follows:

"Art. 2925. The release of the principal, without any reserve as to interest, raises the presumption that it also has been paid, and operates a release of it."

If the above article establishes a *conclu-*

*sive presumption* of a waiver of interest in all cases where the principal is paid and accepted without protest, irrespective of whether the interest is due as a result of an express contract or by way of damages, it is clear that in Louisiana the necessity for consideration in the way of detriment to the promisee is not required, as it is at common law, to support such a release, at least in the case of interest, where the principal has been paid and accepted without reservation or protest.

Counsel for plaintiff, however, contends that Article 2925 quoted above merely raises a presumption of waiver which can be rebutted and as a matter of fact was rebutted in the present action, because the uncontradicted testimony in this case, which was admitted without objection, was to the effect that interest was not and has never been paid on the judgment in question.

Although the question raised by counsel for plaintiff is not free from doubt, we are of the opinion that the article establishes a conclusive presumption of law, or, in other words, a presumption juris et de jure. Article 2925 of the Louisiana Civil Code was taken without change from the Code Napoleon, and is a literal translation of article 1908 of the Code Napoleon.

Article 1908 of the Code Napoleon is interpreted by some French authorities as establishing a presumption which may be rebutted by evidence showing that as a matter of fact interest has not been paid. Toullier, t. 10, n. 31, et s., 541; Duranton, t. 13, n. 431; t. 17, n. 606; Cotelle, De l'interet, n. 212; Duvergier, n. 260; P. Pont. t. 1, n. 320; Guillouard, n. 137. The weight of French authority, however, seems to support the view that the article of the Code Napoleon in question establishes a

conclusive presumption, i. e., a presumption juris et de jure, and that evidence or proof that interest has not in fact been paid will not be permitted or considered. Delaporte, Pand. franc sur l'art. 1908; Zachariae, Massi et Verge, t. 4, p. 467, Paragraph 709, note 3; Aubry et Rau, t. 4, p. 602; Paragraph 396; note 8; Troplong, n. 414; Toullier, t. 6, p. 449; Boileux, t. 6. p. 429; Laurent, t. 26, n. 518; Baudry-Lacantinerie, t. 3, n. 834.

That article 2925 of the Louisiana Code establishes a *legal* or conclusive presumption of law seems to be supported also by the language of article 1352 of the Code Napoleon and article 2287 of the Louisiana Code, defining and describing the effect of the *legal presumption*. Article 2287 of the Louisiana Code provides:

"Legal Presumption dispenses with all other proof, in favor of him for whom it exists.

"No proof is admitted against the presumption of the law, when, on the strength of that presumption it annuls certain acts or refuses a judicial action, *unless it has reserved the contrary proof*, and saving what will be said on the judicial confession." (Italics ours.)

In both the Louisiana Article and the analogous article of the Code Napoleon, a presumption is considered and interpreted as a *legal* or conclusive presumption, unless in its terms and language "it has reserved the contrary proof." It is to be noted that in neither Article 2925 of the Louisiana Civil Code nor the identical article, 1908, of the Code Napoleon, has the law "reserved the contrary proof." In other words, since the two similar articles referred to do not contain language expressly or impliedly indicating that the presumption created can be rebutted by "contrary proof," it follows, logically, in the light of articles 2287 of the Louisiana Code and

1352 of the Code Napoleon, that the presumption created is a *legal* presumption.

The following quotation from Laurent (26 Laurent, p. 539, sec. 518) is illustrative of the reasoning of the French commentators, who interpret the similar article of the French Code (1908) as establishing a conclusive or *legal* presumption of law:

"Cette présumption admet—elle la preuve contraire? La question est controversée. D'après l'art. 1352, nulle preuve n'est recue contre le présumption de la loi lorsque, sur le fondement de cette présumption, elle dénie l'action en justice. Il s'agit de savoir si l'on peut dire que la loi dénie l'action en justice. A notre avis, l'affirmative n'est pas douteuse. Tout le monde admet que, dans le cas prévu par l'art. 1282, le prèuve contraire n'est pas admise contre la présumption de liberation que la loi établit en faveur du debiteur, lorsque le creancier lui remet volontairement, le titre original sous signature privée qui constate le dette; la raison en est que dans ce cas la loi dénie l'action en justice au créancier, non pas qu'il lui soit défendu d'agir contre son débiteur, mais s'il le poursuit, il sera repoussè pas l'exception resultant de la présumption; cette exception est péremptoire, puisque la loi dit qu'il y a preuve de la liberation. Il en doit être de même dans le cas prévu par l'art. 1908, puisque le loi dit aussi que la quittance, sans reserve des interêts, opère la libération. On objecte que c'est forcer le sens des mots que de dire que la loi en établissant une présumption de liberation, dénie l'action en justice; il faudrait, dit-on, une disposition formelle qui, sans équivoque aucune, dénie l'action en justice, pour que l'exception de l'art. 1352 fût applicable. Notre response est simple et décisive; interpretér ainsi la disposition de l'art. 1352, c'est l'effacer du code, car la loi ne dénie jamais en termes formels l'action en justice." —which we translate as follows:

"Does this presumption admit of contrary proof? The point is controverted. Following Art. 1352, no proof is admitted against a presumption of law when on the basis of that presumption it denies the right to sue (l'action en justice). The question is—Can we say that this law denies the right to sue? In our opinion the affirmative cannot be doubted. Everyone admits that, in the case covered by art. 1282, contrary proof is not admitted against the presumption of release which the law sets up in favor of the debtor when the creditor voluntarily turns over to him the original act under private signature which witnesses the debt; the reason for this is that in this case the law denies the right to sue to the creditor, not that it is forbidden to him to proceed against the debtor, but if he does so, he will be defeated by an exception resulting from the presumption; this exception is peremptory, since the law says that there has been proof of liberation. It must be the same in the case of Art. 1908, since the law also says that the release, without reservation of the interest, operates as a liberation. It may be objected that this is to force the sense of the words in order to say that the law, in establishing a presumption of liberation, denies the right to sue; one might say that it is necessary to have a formal provision, without any equivocation, which denies the right to sue in order for the exception of Art. 1352 to apply. Our response is simple and decisive; to interpret the phraseology of Art. 1352 thus is to erase it from the code, for the law never denies the right to sue in formal terms."

See, also, 6 Aubry et Rau, sec. 396, p. 106; 20 Baudry-Lacantinerie & Wahl (De La Depot, etc.) Sec. 919; French Civil Code, Arts. 1352, 1356, 1357; City of New Orleans v. Jackson, 33 La. Ann. 1038.

The remaining question in this connection to be considered is whether the facts involved in the present case come within any exception to the general rule as to the *legal presumptions* established by the Louisiana and French Codes and jurisprudence. The French authorities we have heretofore cited, which announce the rule that article 1908 of the Code Napoleon (similar to article 2925 of the Louisiana Code) establishes a *legal* or conclusive presumption of law, also state certain exceptions to the rule. In this connection, in 20

Baudry-Lacantinerie & Wahl (De La Depot, etc.) p. 490, sec. 920, it is said:

"In every case the presumption of Article 1908 may be destroyed by the admission of the debtor, affirming that he has not paid the interest, or by the oath of the creditor, in denunciation of the debtor, that it has not been paid. All legal presumptions, even those which do not allow contrary proof, may be combatted by admission or oath."

See, also, Cass. 13 Janv. 1875, S. 75, 1, 244; D. 75, 1, 117, Jour. P. 75, 1, 598; 26 Laurent, p. 539, sec. 518, et seq.

The law as stated by Baudry-Lacantinerie is supported by the express language of article 1352 of the Code Napoleon, which we translate as follows:

"The legal presumption dispenses with all other proof in favor of him for whom it exists. No proof is admitted against the presumption of law when on the strength of that presumption it annuls certain acts or refuses a judicial action, unless it has reserved the contrary proof and except what will be said on oath or on judicial confession."

If the legal presumption created by Article 1908 of the Code Napoleon can be rebutted either by a *judicial confession* of the debtor or by the *oath* of the creditor, as pointed out in article 1352 of the Code Napoleon quoted above, it would follow, in the present case, according to French law, that the creditor has the right, *on oath*, to show that interest has not been paid, and this proof *under oath* has been made in the lower court according to the testimony taken in connection with the trial of the rule.

The Louisiana Code, however, seems to be different from the French Code in relation to this particular exception. The language of article 2287 of the Louisiana Code is identical in all respects with article 1352 of the French Code, except it will be noted that the words "on oath" are omitted from the Louisiana Code article, and the last clause of the Louisiana Code article reads as follows: "Saving what will be said on the judicial confession." In short, article 2287 of the Louisiana Code omits the additional exception in the form of the *oath* of the creditor described in the French Code, and provides at least insofar as Louisiana is concerned, that only *judicial confessions* are permitted to rebut a *legal* or conclusive presumption of law.

Since it is not permitted in Louisiana, as it is in France, to rebut a presumption juris et de jure by the *oath* of the creditor, the evidence and proof in this case, which was under *oath* and was not objected to by defendant, cannot avail the plaintiff. It is not contended and could not be contended, of course, that there has been a *judicial confession* by the defendant in this case. We conclude, therefore, that, whatever may be the law of France, the facts presented in the present case do not come within the exception to the rule in relation to *legal* presumptions described in article 2287 of the Louisiana Civil Code.

The final and only remaining question to be considered is the contention of plaintiff that, when he accepted the payment of the principal without protest or reservation, he was ignorant of the existence of the Act of 1916, which entitled him to interest on the judgment. The Louisiana Civil Code and the civil law, as opposed to the general rule of the common law, recognize that errors of law invalidate contracts and other specially described transactions under certain circumstances. Rev. C. C. art. 1846. The Louisiana Civil Code seems to clearly provide, however, that "er-

ror of law can never be alleged as a means of acquiring." Revised Civil Code, 1846, subparagraph 3. It is also important to note in this connection that article 2287 of the Louisiana Code, previously quoted, provides that a *legal presumption* can be voided only in case there has been a *judicial confession*, and article 2291, defining a *judicial confession* expressly states that "it can not be revoked on a pretence of an error in law." We have not been referred to nor have we been able to find any article of the Civil Code which indicates that a *legal presumption* may be disregarded or defeated in case an error of law is shown. In fact, the fundamental theory of a legal presumption, as we understand it, is that the law conclusively attaches a certain significance and effect to certain facts based on considerations of public policy, and refuses to permit the real facts to be shown or to be inquired into on the theory that in the average case such a conclusive presumption will be in accord with the real facts and will work out justice. To permit the effect of a conclusive or legal presumption to be avoided and nullified by an allegation of an error of law would seem to defeat the very purpose and policy of the law in establishing such presumptions.

We are of the opinion, therefore, that the acceptance of the payment of the principal by the plaintiff in this case, without any protest or reserve as to interest, operates as a release of the interest within the meaning of the article of the Louisiana Civil Code hereinabove referred to.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment rendered December 1, 1930, and signed January 19, 1931, maintaining the rule herein taken by Joseph Grennon, be, and it is, annulled, avoided, and reversed, and that there now be judgment in favor of the defendant in rule, the New Orleans Public Service, Inc., and against the plaintiff in rule, Joseph Grennon, dismissing and discharging said rule at plaintiff's cost.

WESTERFIELD, J., and MORENO, Judge ad hoc, participating.