**PEAVY–WELSH LUMBER CO., Inc., v.
HENDRIX.**

No. 5180.

Circuit Court of Appeals, Fourth Circuit.

Dec. 22, 1943.

John B. Files, of Shreveport, La., and G. L. B. Rivers, of Charleston, S. C. (Hagood, Rivers & Young, of Charleston, S. C., on the brief), for appellant.

Pinckney L. Cain, of Columbia, S. C. (George Warren, of Hampton, S. C., Thomas, Cain & Black, of Columbia, S. C., and Rosen, Kammer, Wolff, Hopkins & Burke, of New Orleans, La., on the brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

DOBIE, Circuit Judge.

Peavy-Welsh Lumber Company (hereinafter called Peavy), as seller, entered into a contract for the sale of timber with Hendrix, as buyer. Under this contract, Hendrix was to start cutting the timber on or before December 1, 1936, and Hendrix was to pay a specified price per thousand feet, log scale, by the fifteenth of the month next after the month in which the timber was cut. Pursuant to the terms of the contract, Hendrix made an advance payment to Peavy of $10,000, which was to be applied on the last timber cut by Hendrix. There was no provision in the contract as to the allowance of interest on either (1) the advance payment of $10,000 made by Hendrix, or (2) the monthly payments to be made by Hendrix to Peavy for the timber which had been cut.

Hendrix fell into arrears on his monthly payments and controversies arose as to the correctness of the amount which Hendrix owed to Peavy. Hendrix claimed he was entitled to (1) a set-off or counterclaim on the ground that he had been compelled to cut unmerchantable timber and (2) interest on the advance payment of $10,000. Conferences were held between the parties in order to arrive at some satisfactory adjustment of the amount which Hendrix was to pay Peavy; but these attempts to effect a satisfactory settlement met with practically no success. In 1942, Hendrix telegraphed Peavy that Hendrix had secured a loan from a bank which would enable him to settle his account with Peavy.

Thereupon, Peavy, on March 19, 1942, sent to Hendrix by mail a statement of the account. In this statement, Peavy claimed a principal amount of $25,500.05, plus interest of more than $6,000. In this statement, credit of $10,000 (the amount of the advance payment) was given to Hendrix, but no credit was allowed to Hendrix on either of his claims for: (1) Interest on this advance payment of $10,000, or (2) the set-off on Hendrix's contention that he was compelled to cut unmerchantable timber. Hendrix, shortly after the receipt of this statement, forwarded to Peavy a check drawn on a bank in South Carolina for $25,500.05, which was the precise amount, without any interest, of the principal claimed under this statement by Peavy. This check contained this notation: "In full for our indebtedness to date."

Upon receipt of this check, Peavy promptly sent a telegram to Hendrix, ex-

pressing dissatisfaction with the amount of the check, since it did not include any of the interest, as set out in the statement furnished by Peavy to Hendrix. At a later conference between Mr. Moore, Vice President of Peavy, and Hendrix, another attempt to settle the account again met with failure. Moore testified that, at this conference, Hendrix denied liability for interest and that Hendrix threatened bankruptcy. Moore testified further that, some days later, he, acting upon the advice of counsel, first had the check certified by the bank upon which it was drawn and then, without either further notice to, or understanding with, Hendrix, he (Moore) cashed the check.

Peavy instituted a civil action against Hendrix in the United States District Court for the Eastern District of South Carolina, to recover the interest alleged to be due. The District Court, sitting without a jury, found for the defendant, Hendrix, on the ground that the cashing of the check by Peavy constituted an accord and satisfaction (or transaction and compromise as it is called in Louisiana) which furnished a complete defense to the action. It is agreed by both parties that the Louisiana law controls. Peavy has duly appealed to this Court.

As far as the instant case is concerned, we feel that there is little difference between the common law doctrine of accord and satisfaction and the Louisiana law of transaction and compromise. Indeed, in cases in this very field, the Louisiana courts have frequently supported their decisions by citing with approval the standard encyclopedias on accord and satisfaction. Great stress has been laid on Articles 2164, 2287 and 2925 of the Louisiana Civil Code.

■ We think the District Court correctly held, as to the instant case, that there is a complete transaction and compromise under the law of Louisiana (1) if there is a bona fide dispute between the parties as to the amount due on the claim, and (2) if the debtor tenders the creditor a check with a clear notation thereon that the check is in full settlement of the claim and (3) if the creditor cashes the check. Nor will it avail the creditor aught to make protests before, or at the time of, the cashing of the check. Actions here speak very much louder than words.

This seems to be amply sustained by the Louisiana cases cited in the opinion of the District Court. Thus (on a set of facts strikingly similar to the instant case), the Court, in Myers v. Acme Homestead Association, 1931, 18 La.App. 697, 138 So. 443, 445, said: "We find it necessary to devote little time to this contention, because the law appears to be well settled that one, to whom a check is tendered containing such a stipulation, must either accept or reject the stipulation, as written, and may not obtain the benefit of the check and, at the same time, avoid the obligation resulting from the stipulation by adding other stipulations intended to nullify the first. In Beck Electric Construction Co. v. National Contracting Co., et al., 143 Minn. 190, 173 N.W. 413, the check tendered contained the stipulation that it was 'in full for painting,' etc. The payee drew a pen line through the words 'in full' and indorsed and cashed the check. The court held that the erasure of the words 'in full' had no effect." The court, too, cited and approved Berger v. Quintero, 170 La. 37, 38, 127 So. 356, and 1 Ruling Case Law 198. See, also, Davis-Wood Lumber Co. v. Farnsworth & Co., La.App. 1937, 171 So. 622; Lee v. DeArmas, 12 La.App. 425, 126 So. 243; Grennon v. New Orleans Public Service, 1931, 17 La.App. 700, 136 So. 309. And, in Sentell v. Wilcox, Orleans App. 1906, 3 Orleans App. 503, it was stated:

"In this case the giving of the checks was made on condition that they would be received in settlement and not in part payment of the disputed account; with full knowledge of that condition, Sentell kept the checks and practically converted them into money by having them certified and thus placing the amount exclusively within his control.

"It was his privilege either to return the checks and sue for the whole amount, or to keep them and accept the condition; he made his choice and must abide by it." (Italics supplied.)

The authority of these cases, we think, is not seriously affected by the cases cited by counsel for Peavy. See Breeland v. Kenner, La.App. 1937, 174 So. 678; Slawson v. Chisesi & Co., 6 La.App. 46; Melanchon v. Provident Life & Accident Insurance Co., 176 La. 1055, 147 So. 346; Coco v. Moss Co., 4 La.App. 645.

■ The most serious contention, we believe, made by Peavy in attacking the validity of the accord and satisfaction, or transaction and compromise, is that here was lacking one essential element in this connection, namely, the presence of a bona fide dispute as to the amount of the claim.

It should be noted that we and the District Court are not called on to decide which of the sums set forth by the one party or the other is actually due under the law. We need not determine whether the contentions of Hendrix have, or have not, juristic validity. For the decision of the instant case, we need decide only that there was a bona fide dispute between the parties. The validity, or lack of validity, of these contentions made by Hendrix can at best be no more than an evidential fact tending to prove or disprove the operative fact of the presence of good faith, on the part of Hendrix, in putting forward these contentions.

But, in the instant case, we are met by the District Court's finding of fact number 10: "10. That the account was in dispute before the check was tendered in full payment of defendant's indebtedness to the plaintiff under said timber contract and it remained in dispute until the plaintiff accepted and cashed the check." And the District Court, near the end of its opinion, declared: "There is no escaping the conclusion in the instant case, that there existed between the plaintiff and the defendant a genuine dispute about the correctness of the account in question."

Thus we must decide, and decide only, whether this finding is "clearly erroneous". We cannot (under Federal Rules of Civil Procedure, rule 52(a), 28 U.S.C.A. following section 723c) set aside this finding, unless we decide that it is "clearly erroneous". We do not think the finding is "clearly erroneous". Without going into the question of interest on the monthly balances to be paid by Hendrix, we find evidence that Hendrix continuously and emphatically insisted (1) that he was entitled to interest on his advance payment of $10,000 and (2) that he was entitled to a set-off because he was compelled to cut unmerchantable timber. The record contains evidence to support the finding that Hendrix asserted these contentions in good faith as claims which he honestly believed to be genuine and not as merely colorable grounds which he advanced in bad faith for the purpose of escaping obligations justly imposed upon him under the contract. We cannot, therefore, say that, on this record, the District Court's finding of the good faith of Hendrix is "clearly erroneous".

The judgment of the District Court is affirmed.

Affirmed.