## JOSEPH DUFFY v. A. EGELAND, Charles A. Ballinger, and the First National Bank of Bisbee, a Corporation.

### (143 N. W. 350.)

Defendant B. sold certain land to plaintiff on the crop contract plan. Plaintiff assigned his contract to the defendant bank as security for a $500 loan. Defendant B. sold the land to defendant E., subject to the said contract. E. served notice of forfeiture for failure to deliver one half of the crops and to pay the taxes according to said contract. Plaintiff brings this action for specific performance, alleging that he has paid both the bank and defendant E. all that he owes them. *Held:*—

**Contract — evidence — payments — application — agreement — taxes — default.**

1. That an examination of the evidence shows that certain credits due to plaintiff from defendant B. were applied by agreement of parties upon other indebtedness, and that plaintiff has paid upon this contract only the sum of $99.09. Further found that he had failed to deliver any part of the crop of 1908, and had failed to pay the 1907 and 1908 taxes upon the land. Under those circumstances he was in default.

**Contract — crop — delivery — notice of cancelation — default — waiver.**

2. Defendant B. had repeatedly urged plaintiff to deliver the half of said crop, but the plaintiff had, through promises and excuses, managed to delay the actual delivery of the grain until the following spring, at which time notice of cancelation of the contract was served. After the service of said notice, plaintiff did nothing to relieve the default for thirty days or at all, and has never deposited any sum whatever to cover said indebtedness. *Held*, that under the circumstances of this case, defendants have not as a matter of law waived their right to cancel the contract.

Opinion filed June 5, 1913. Rehearing denied October 13, 1913.

Appeal from the District Court for Rolette County, *Cowan,* J.

Affirmed.

*M. A. Hildreth,* for appellant.

The bank held the contract merely as security, and, upon payment of the amount due, the plaintiff would be entitled to a reassignment of the contract. Fifer v. Fifer, 13 N. D. 21, 99 N. W. 763.

Forfeitures are only sustained when the parties have contracted therefor. Bennett v. Glaspell, 15 N. D. 245, 107 N. W. 45.

The grounds upon which a contract may be forfeited must be contained in the contract: A contract will not be extended by construction to include other grounds than those specified in it. Cughan v. Larson, 13 N. D. 373, 100 N. W. 1088.

The decree of the court in ordering a cancelation of the contract is without merit. Fargusson v. Talcott, 7 N. D. 183, 73 N. W. 207; Bucholz v. Leadbetter, 11 N. D. 473, 92 N. W. 830; Annis v. Burnham, 15 N. D. 577, 108 N. W. 549.

*H. E. Pelymat, F. T. Cuthbert,* and *A. R. Smythe,* for respondents.

The grounds upon which forfeiture is claimed must be provided for in the contract. Where time is made of the essence of the contract, the party seeking forfeiture must show diligence. Notice of cancelation or forfeiture must be given as by law provided. Williams v. Corey, 21 N. D. 509, 131 N. W. 457, Ann. Cas. 1913 B, 731; Golden Valley Land & Cattle Co. v. Johnstone, 21 N. D. 101, 128 N. W. 691, Ann. Cas. 1913 B, 631; Annis v. Burnham, 15 N. D. 577, 108 N. W. 549; Bennett v. Glaspell, 15 N. D. 239, 107 N. W. 45; Cughan v. Larson, 13 N. D. 373, 100 N. W. 1088; Fifer v. Fifer, 13 N. D. 21, 99 N. W. 763; Bucholz v. Leadbetter, 11 N. D. 473, 92 N. W. 830; Fargusson v. Talcott, 7 N. D. 183, 73 N. W. 207.

The grantor or his assignee, under a contract like that in this case, cannot waive a default in the payment of taxes on the land. Rev. Codes 1905, § 1571.

Plaintiff's failure to pay or tender payment of taxes due devests him of all rights. Rev. Codes 1905, § 7479.

BURKE, J. On the 23d day of February, 1904, Charles Ballinger, one of the defendants, was the owner of a quarter section of land situated in Rolette county, North Dakota, and upon that date he entered into what is known as a crop contract for the sale thereof to the plaintiff Duffy for the sum of $3,000. This contract provided, among other things, that Duffy was to pay the purchase price by delivering one half of all the grain and hay to be grown on said premises in each and every year thereafter during the continuance of the contract, free from expense to the first party. It was further agreed that said Duffy would pay all the taxes levied or assessed on the said premises before the same became delinquent. Upon the full payment of the said $3,000 being

made, the said Ballinger agreed to convey the premises by good and sufficient deed of warranty. This contract was later modified in the following particular; A mortgage of $2,000 was placed upon the land of Ballinger, and it was agreed that when Duffy had paid $1,000 upon the purchase price, as well as the taxes and interest, said Ballinger would deliver a deed subject to the $2,000 mortgage. Ballinger concedes that Duffy had paid all of the interest upon the land and $100 upon the purchase price at the time of the service of the notice of cancelation of the contract, which will be hereinafter discussed. Duffy, on the other hand, contends that he has paid the entire amount of the purchase price, but we think after a full examination of the record that the proof does not substantiate this claim. In fact, we are agreed that the testimony of Mr. Egeland must be accepted as true, and that in the spring of 1909 Mr. Duffy had reduced the original indebtedness slightly less than $100. Under this view of the evidence we find that Mr. Duffy had failed to deliver one half of the crops raised for the years 1906, 7, and 8. It is also undisputed that he had failed to pay the taxes for the year 1908. In addition to those defaults, Duffy had hypothecated his contract with the First National Bank of Bisbee to secure the payment of $500 borrowed money. The defendant Egeland purchased the land of Ballinger in the spring of 1909, thereby succeeding to all interest in the contract. On April 19, Egeland caused notice of forfeiture of the contract to be served upon Duffy, alleging therein that default existed upon the part of said Duffy in that he had failed to deliver one half of the crop grown upon the land in the year 1908, and that he had failed to pay the taxes for said year, and that he had failed to pay the said purchase price in any other manner. This notice of cancelation was drawn and served under §§ 7494-7, Rev. Codes 1905 which sections have supplanted the common-law procedure upon this question. Section 7495 reads: "Whenever any default shall have been made in the terms or conditions of any such instrument hereinafter made, and the owner or vendor shall desire to cancel or terminate the same, he shall, within a reasonable time after such default, cause a written notice to be served upon the vendee or purchaser, or his assigns, stating that such default occurred and that said contract will be canceled or terminated, and shall recite in said notice the time when said cancelation or termination shall take effect, which shall

not be less than thirty days after the service of such notice." Section 7497 reads: "Such vendee or purchaser or his assigns shall have thirty days after the service of such notice upon him in which to perform the conditions or comply with the provisions upon which the default shall have occurred; and upon such performance, and upon making such payment, together with the costs of service of such notice, such contract or other instrument shall be reinstated and shall remain in force and effect the same as if no default had occurred therein.   .   .   ." Upon the service of this notice of cancelation Duffy made no effort to relieve himself of any default, but on the contrary instituted this action against Ballinger, Egeland, and the First National Bank of Bisbee for specific performance, and in his complaint alleges that he has paid Ballinger in full down to the amount of the mortgage to be assumed, and that he owes the bank of Bisbee nothing, but he also asks that an accounting be had between himself and the defendants, and alleges that he is ready, willing, and able to pay any sum found to be due upon said contract, and that he is likewise willing and able to pay any amount that may be found due to the said bank upon such accounting, and prays that a deed be issued to him by said Egeland.   The defendants Egeland and the bank answer, alleging that Duffy had paid the bank the sum of $22.65 only upon his $500 indebtedness, and that he had paid but the sum of $99.09 besides interest upon the said contract. They further deny that he is able to pay the balance due, but allege that there are many judgments outstanding against him on record unpaid.   They further allege that they were willing to accept the amount due upon the contract, and issue a deed to Duffy when he should pay the same.   This latter offer was made orally in this court upon the argument of this case.   The trial court found in favor of the defendants on all of the issues, held that the contract had been canceled according to law, and decreed that title be quieted in Egeland.   Appellant demands a trial *de novo* in this court.

(1) The first question presented is whether or not Duffy was in default at the time of the service upon him of the notice of cancelation. It is his contention that certain threshing done for Ballinger should have been credited upon this contract, and that if such credits had been entered the purchase price would be paid in full.   Upon this point the evidence is much too voluminous to be set up here, but upon an exami-

nation of the whole record we are convinced that the facts are as follows: Ballinger was running a general store and machinery business, and Duffy traded with him. A store bill and machinery bill incurred by Duffy has never been paid unless by the threshing bill, which Duffy now seeks to credit upon the land contract. Ballinger testifies positively that the threshing bill was to be credited upon the store and machinery accounts, and that Mr. Duffy agreed that such application should be made. Duffy's testimony does not appeal to us as being probable. There seems no reason why Ballinger should apply the threshing accounts upon this land contract, which was amply secured, and carry Duffy upon the store and machinery accounts, which were entirely insecure. A perusal of Duffy's examination tends further to convince us that Ballinger's version is the true one. We thus conclude that at the time the contract was attempted to be canceled Duffy had not paid more than $100 of the $3,000 indebtedness. In addition to this it is agreed that he raised a crop of macaroni wheat upon the land during the year 1908, which he failed to divide and deliver to Ballinger. He also had failed to pay the 1907 and 1908 taxes upon the land. Under those circumstances there is no doubt that he was in default, and that Ballinger or his successor, Egeland, had the right to cancel the contract unless such right had been expressly waived.

(2) The appellant contends that this default had been waived because the notice of cancelation was not served until April 19, at which time he had prepared the land for crop and had seeded 30 acres thereof. We are cited to the cases of Fargusson v. Talcott, 7 N. D. 183, 73 N. W. 207, and Annis v. Burnham, 15 N. D. 577, 108 N. W. 549. An examination of those two cases shows the facts to be a great deal different than the facts in the case at bar. In the Fargusson Case the court finds that the service of the notice of cancelation was the first indication on the part of the vendor that he would insist strictly upon his rights. The defendants had requested an extension of time of one year on the contract, and the plaintiff had put them off without any definite answer. During this time the defendant had acted upon the assumption that this extension would be granted to him, and had expended time and money upon the place. This court said that under such circumstances the defendant had a right to infer that the extension had been granted. In the Annis Case this court said: "No fixed

rule can be laid down as to the time within which a person must rescind. What may be a prompt rescission in one case would not be so under the facts of another case." Other facts are given in the Annis Case which clearly distinguish it from this. In the case at bar it appears that Ballinger was all the time insisting that he be given one half of the 1908 crop, and that he would cancel the contract if it were not forthcoming. This is not denied by Duffy, and is an accepted fact in the case. It is contended that Duffy kept putting Egeland off with promises to deliver the grain from time to time, thus staying the service of the notice. Where the conduct of the vendor is such as this, it would be preposterous to hold that as a matter of law he had waived his right to cancel. On this ground alone we must hold the cancelation proper. In addition to this we have the question of the taxes which Duffy agreed to pay but which he neglected. The taxes for 1908 became delinquent on March 1, 1909, and were paid by Egeland in April shortly before the notice of cancelation. Duffy did not attempt to excuse this default either, and at the end of thirty days his right to do so had been foreclosed. We need not therefore pass upon the interesting question as to whether he could compel specific performance until he had redeemed his contract from the bank, and the other interesting question, whether he could compel specific performance without having tendered the amount which we have found to be due upon the contract. It is our conclusion that Duffy was in no shape to enforce this action, and that under all of the facts of the case the holding of the trial court that his rights under the contract had been duly and legally forfeited was correct, and the judgment is in all things affirmed.