STATE, Appellant, *v.* HART REFINERIES, Respondent.

(No. 7,937.)

(Submitted May 24, 1939.   Decided July 19, 1939.)

[92 Pac. (2d)· 766.]

*Mr. Harrison J. Freebourn,* Attorney General, and *Mr. Mark H. Derr,* Assistant Attorney General, for Appellant, submitted an original and a reply brief; *Mr. Derr* argued the cause orally.

*Mr. J. E. Patterson* and *Mr. C. E. Comer,* for Respondent (and cross-appellant), submitted an original and a reply brief; *Mr. Comer* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal by plaintiff from a judgment in its favor ▉ in the sum of $247.95, which was less than the demand in the complaint, and from which judgment defendant filed a cross-appeal. The action is to renew a former judgment for an alleged balance of principal and interest. The original judgment was entered February 14, 1928. This action was commenced July 8, 1938. Defendant pleaded that the cause of action was barred by sections 9027 and 9028, Revised Codes, limiting such an action to ten years. This was denied by the reply, but it did not plead any affirmative matter tolling the statute of limitations. Plaintiff's counsel contends, however, that the running of the statute was suspended because the original judgment was appealed first to this court, where it was affirmed July 12, 1928, and then to the Supreme Court of the United States, where it was affirmed February 18, 1929, and contends that we should take judicial notice of the fact of the two appeals, and of the fact that a supersedeas bond was filed on both appeals.

142

Assuming that we may take judicial notice of these facts in the absence of a plea tolling the running of the statute, still we must conclude that under our statutes the action is barred. Sections 9027 and 9028 prescribe ten years as the limitation of time for the commencement of an action "upon a judgment or decree of any court of record of the United States, or of any state within the United States." And this limitation applies to the state in the same manner as to private parties. (Sec. 9043, Rev. Codes.) The statutes contain some exceptions to the running of the time, as where defendant is out of the state (sec. 9048), where the plaintiff is under certain disabilities (sec. 9049), and where the commencement of the action is stayed by injunction or court order (sec. 9055).

The supersedeas bond merely prohibited the issuance of an ▇ execution on the judgment pending appeal. (*Fredericks* v. *Clark*, 3 Mont. 258.) The time that the appeal was pending, there being a supersedeas bond in effect, might have to be eliminated in computing the six-year period for levying execution under section 9416, Revised Codes. (Compare *Ware* v. *Pleasant Grove Township*, 9 Kan. App. 700, 59 Pac. 1089.) We do not pass upon that point; but neither the appeal nor the supersedeas prohibited the bringing of an action to renew or revive ▇ the judgment. The remedies of levying execution and bringing an action to renew the judgment are cumulative. (*Lindsay Great Falls Co.* v. *McKinney Motor Co.*, 79 Mont. 136, 255 Pac. 25; *Haupt* v. *Burton*, 21 Mont. 572, 55 Pac. 110, 69 Am. St. Rep. 698.) The right to bring suit on the judgment is not dependent upon the right to levy execution. In fact, execution must be issued within six years after the entry of the judgment (sec. 9416), except by leave of court (sec. 9421), whereas action for revival or renewal may be brought as a matter of right within ten years. (Compare *Citizens' Nat. Bank* v. *Lucas*, 26 Wash. 417, 67 Pac. 252, 90 Am. St. Rep. 748, 56 L. R. A. 812.)

But counsel for the state contend that had such an action ▇ been brought while the appeal was pending, the complaint would have been subject to demurrer on the ground that there was another action pending for the same cause, under section

9131, Revised Codes, particularly when read in conjunction with section 9821, reading: "An action is deemed to be pending from the time of its commencement until its final determination upon appeal, or until the time for appeal has passed, unless the judgment is sooner satisfied." The answer to this contention is that an action to renew a judgment is not for the same cause as the principal proceeding in which the judgment was obtained. (34 C. J. 1083, 1084, note 38.) In other words, in the action to renew the judgment the facts involved in the original proceeding are not open to controversy. The original cause of action becomes merged in the judgment, and in the action to renew or revive the judgment the issues are narrowed to the fact of the entry of the original judgment, and do not embrace the facts upon which the judgment was entered.

A case involving some of the legal principles applicable here is that of Toombs v. Hornbuckle, 3 Mont. 193. By a judgment entered April 21, 1870, Toombs was declared entitled to the use of certain waters. The defendant Hornbuckle appealed to this court and put up a stay bond. This court affirmed the judgment on January 16, 1871. Hornbuckle appealed to the United States Supreme Court and executed another stay bond. That court also affirmed the judgment (Hornbuckle v. Toombs, 18 Wall. 648, 21 L. Ed. 966), the remittitur going to the trial court on January 8, 1875. Toombs then brought action on July 16, 1875, against Hornbuckle for wrongful diversion of water in the years 1870, 1871, 1872, 1873 and 1874. The statute of limitations for such an action was three years. He contended that he could not bring the action while the appeals were pending. This court held otherwise. The basis of the decision was that the statute did not in express terms create an exception and, there being none, the court would not create one. The court said: "There is no order of court, or provision of law, which prohibits the respondent from bringing an action to recover the damages for the wrongful diversion of the water at the times when his right so to do accrued. If there had been such an order, or statutory prohibition, the time during which the disability existed would not prevent the running of the Statute of

Limitations, unless the legislative assembly excepted the same in express terms."

No doubt if an action is brought to renew a judgment while an appeal from the judgment is pending, the matter could be set up by a plea in suspension or abatement. This would not defeat the action but merely suspend proceedings until the disposition of the appeal. (49 C. J. 232; *State ex rel. Spitzer* v. *Beveridge,* 109 Or. 69, 218 Pac. 1112.) As was said in *Lindsay Great Falls Co.* v. *McKinney Motor Co.,* supra: "Nor does there appear to be any restriction upon the judgment creditor's right to commence action within the period limited by the statute, 10 years." That an appeal does not prevent an action on the judgment seems clear. (*Nill* v. *Comparet,* 16 Ind. 107, 79 Am. Dec. 411.) The courts are divided upon the question whether the pendency of an appeal, or the right to appeal, enlarges the time for commencing an action to renew a judgment.

In California it has been held that a judgment is not final until determination of the appeal, or, if no appeal be taken, until the time to appeal has expired, and that the statute does not commence to run until the appeal, if taken, is determined, or, if no appeal be taken, until expiration of the time allowed therefor. (*Feeney* v. *Hinckley,* 134 Cal. 467, 66 Pac. 580, 86 Am. St. Rep. 290; *Willard* v. *Dobbins,* 191 Cal. 287, 216 Pac. 1008.) Utah takes the contrary view. (*Sweetser* v. *Fox,* 43 Utah, 40, 134 Pac. 599, Ann. Cas. 1916C, 620, 47 L. R. A. (n. s.) 145.) The general rule is that the statute of limitations begins to run against an action on a judgment from the date of its rendition and entry. Cases supporting this rule are listed in the note in Ann. Cas. 1916C, 625 et seq.

In *Haupt* v. *Burton,* supra, while the point we are considering was not directly involved, this court, at a time when the statute of limitations on a judgment was six years, said: "The life of a judgment under section 41 of the Code of Civil Procedure (Comp. St. 1887) was six years. It was accordingly necessary for plaintiffs to bring their suit within that time after date of the judgment sought to be revived." That is what our statute contemplates. Section 9028 simply limits to ten

years an action on a judgment. The statute does not even say a "final judgment." Certainly a judgment appealed from is still a judgment and remains one until reversed or set aside on appeal.

Under our statute there is no exception that extends the time for bringing an action on a judgment so as to permit exclusion of the time when appeals were pending or when a supersedeas bond was in effect. If the legislature so intended it would have so provided in section 9055. That section reads: "When the commencement of an action is stayed by injunction, or other order of the court or judge, or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action." Here the supersedeas did not prevent the commencement of an action.

While there are cases holding that a stay of proceedings suspends the running of the statute, we are not impressed with their reasoning under statutes such as ours.

More than ten years having elapsed from the entry of the judgment until the commencement of this action, the plea of the bar of the statute was good.

The judgment is reversed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS and ERICKSON concur.

MR. JUSTICE STEWART:

I concur in the result reached in the majority opinion; however I think that the judgment should be reversed on another ground.

The pertinent facts as to which there is no dispute are: That a judgment was rendered against the defendant in the sum of $26,665.38, which was for taxes, penalty and interest; $22,674.03 of that amount was by the terms of the judgment to draw interest from the date thereof at eight per cent. per annum until paid. The balance of the judgment was for interest and the judgment provided that that amount should not draw interest in

order to avoid the effect of compounding interest. About a year after the entry of judgment, and presumably after the appeals had taken place, defendant and the State Board of Equalization met and mutually computed the amount due, i. e., the amount of tax, the penalty and the interest. In legal effect this amounted to an account stated. It was then ascertained that the balance then due was $28,781.87. Thereafter a series of monthly installment payments was inaugurated by the defendant and paid to the Board of Equalization. Two years later the full sum of $28,781.87 was paid.

All payments were made to the State Board of Equalization, which, in turn, after entering the same on its books and receipting therefor, deposited the respective amounts in the office of the State Treasurer. With the payment of April 14, 1931, the last one made, defendant and the board apparently considered the amount of the judgment paid in full, except that the board asserted that there was a small balance of accrued interest. No effort was made to collect this balance by the board or by the state, or by anyone representing either, for about seven years at which time the State Treasurer secured a copy of the records of the State Board of Equalization with relation to the payments made, and from those records made independent computations and allocations of the payments received, as to interest and principal, respectively, and decided that there was still owing to the state over $1,000 of principal and interest. The result of these computations furnished the basis for the 1938 action and the present appeal.

The only error assigned by plaintiff is that the court erred in granting judgment for less than the amount demanded in its complaint. Defendant's cross-assignments challenged the court's action in (1) overruling its demurrer to the complaint; (2) failing to dismiss the action with prejudice; (3) failing to hold that the plaintiff's cause of action was barred by the statute of limitations; and (4) failing to hold that the action could not be maintained because the full amount due had already been paid.

It will be observed that the merits of the controversy are squarely tendered by the plaintiff's one assignment of error, and the contention of defendant that the full amount had been paid. The other assignments of the defendant are of a more technical nature and to sustain any one of them would deny the plaintiff the right of recovery. In effect they are (1) that the action on the judgment was not instituted for more than ten years after the entry of the same; (2) that plaintiff did not plead ownership of the judgment at the time of the new suit; and (3) that the state had estopped itself from maintaining an action for the interest after accepting full payment of the principal amount due as such.

In 1921 the gasoline distributor's license tax law under which the tax here existed, was enacted and appeared as Chapter 185, Revised Codes of 1921. Under this Act (sec. 2386, Rev. Codes 1921) distributors of gasoline were required to make quarterly reports showing the total number of gallons of gasoline and distillate refined, manufactured or compounded, sold within the state. Certain other information as required by the Board of Equalization was also to be furnished and the reports delivered to the State Treasurer. Section 2387, Revised Codes of 1921, required payment of the amount shown to be due for taxes to be made to the State Treasurer. In the event that a distributor failed to make out the required statement, section 2389, Revised Codes 1921, directed the Board of Equalization to inform itself of the information required to be set forth in such statement for the particular quarter and determine and fix the amount of license tax due the state. Such information and estimates were to be turned over to the State Treasurer to be used in the collection of the tax, and he in turn was authorized to call upon the attorney general for legal assistance in the matter.

In 1927 Chapter 79 was enacted as amended, now sec. 2122.23, Revised Codes. Thereby the responsibility for collecting the gasoline license tax and issuing receipts therefor was taken from the State Treasurer and placed upon the State Board of Equalization with directions to turn such collections over to the trea-

surer on the 10th and 25th of each month. This Act was approved and became effective March 8, 1927.

The original judgment was entered February 15, 1928. I have detailed the history of the gasoline license tax law for the purpose of showing how the State Board of Equalization became involved in the collection of the tax. As I have stated, at the outset, after ascertainment of the exact amount due the state from defendant, all installments paid thereunder were transmitted and delivered to the State Board of Equalization, and by it turned over to the State Treasurer. This is apparently the statutory method of procedure and has been since 1927. (Sec. 2122.23, Rev. Codes.)

It is urged by counsel for the state that when the delinquencies were reduced to judgment, the manner of collection was changed, and that the Board of Equalization had no further power in the matter. Technically speaking, such may have been the case, and probably thereafter the correct and safest procedure for all concerned would have been to have the money paid to the clerk of the district court in which the judgment was rendered, rather than to either the State Board of Equalization or the State Treasurer. But the fact is that the defendant did pay its money to the Board of Equalization, and that that board, assuming that the law I have mentioned was controlling, turned it over to the State Treasurer.

From letters of transmittal from the defendant to the board and the board's receipts therefor, it appears that neither the board nor defendant regarded the payments as made on a judgment, because the documentary evidence introduced shows that both always referred to the payments as so much on the "1926 tax." The money may have arrived at the office of the treasurer by the wrong method and through erroneous channels, but nevertheless it did arrive, and apparently from the acquiescent attitude of the officials as manifested by the record, the procedure was satisfactory to all, including the State Treasurer.

The only record of the payments made and of the credits receipted therefor appeared in the office of the State Board of

Equalization. It was impossible for the treasurer's office to have evolved any theory of payment, credit and allocation affecting the instant litigation without first obtaining the board's records of payments made on the delinquencies.

The record does not disclose explicitly in what manner the board allocated the payments with reference to the discharge of principal and interest. From the documentary evidence consisting of letters of transmittal to the board, endorsements of payments by the board on defendant's current monthly reports, defendant's Exhibit A, consisting of a copy of the original record from the office of the board carrying an itemized account of defendant's payments in such an arrangement as to indicate that it was the intent of the board to apply the installment payments first to the liquidation of the tax item and then to interest, and most important of all the letter from the board's chief clerk in response to defendant's last remittance with relation to the delinquent tax, it would appear beyond doubt that the board did actually apply the payments in discharge, first, of the principal amount of the tax due, and then to the accrued interest. Whatever method of allocation was adopted by the board seems immaterial in view of what finally transpired between the parties. The payments were all made within two years of the time the amount had been computed and settled upon, i. e., the full amount of $28,781.87, ascertained to be due at the time the joint computation was made. This amount represented all of the tax, penalty and accrued interest to the date it was figured. The chief clerk's response to defendant's last payment on the 1926 delinquencies, dated April 16, 1931, was as follows:

"We received today your gasoline license tax report for the month of March with $487.87 [$480.87?], which makes a total paid by you on your 1926 gasoline tax of $28,781.87. As I understand it there is interest due at 8%, which will have to be paid, and I would suggest that you figure out the interest due up to the date of the last payment which was this date, and send us a check covering the amount of the interest. As the

judgment is in the Attorney General's office I expect you have a copy of the same on which you can figure the interest.''

From this letter, and the other documentary evidence mentioned, in which reference was always made to a payment of the 1926 tax, it is evident that some interest was still claimed by the board. The district court apparently took the same view and ascertained the amount to be $247.95, and gave judgment therefor. I do not deem it necessary to set forth the computation which illustrates how this figure must have been accomplished, nor my own independent calculations, which on the theory apparently adopted by the lower court would have made the amount due from defendant $329.70, instead of the amount of the judgment. The smaller amount was the result of erroneous computation by the trial court.

Under my view of the law, it would serve no useful purpose to set forth the calculations of the treasurer's office, because at best they only represent a theory of allocation adopted long after the events and compiled from a set of figures obtained from the Board of Equalization just before the institution of this suit. His result was obtained by crediting accrued interest to the date of each payment, which, as I have indicated, was not done by the Board of Equalization, and was not the method employed by either party at the time.

It is clear that the whole principal of the obligation owing was accepted by the Board of Equalization as such. That being the case, the plea of defendant with relation to section 8665, Revised Codes, becomes important. That section provides: ''Accepting payment of the whole principal, as such, waives all claim to interest.'' This section was adopted from California (sec. 3290, Civ. Code), and appeared in our Code as section 4283 of the Civil Code of 1895. The section has been under consideration by the California courts. (*City of Los Angeles* v. *City Bank*, 100 Cal. 18, 34 Pac. 510; *Valentine* v. *Donohoe-Kelly Banking Co.*, 133 Cal. 191, 65 Pac. 381.)

As I have pointed out, the principal amount due on the original tax and penalty, as shown by the judgment, was $22,674.03.

The total amount, adding the interest item, was $26,665.38. The judgment specifically provided, however, that only the former sum was to draw the legal rate of interest of eight per cent. This, no doubt, was to give effect to the prohibition against compounding interest. At the time the amount was mutually ascertained, the total amount due was $28,781.87. This amount was paid in full. It may readily be observed that this consisted of a composite of three distinct items: tax, penalty and interest, as directed by the court. The board accepted this amount and the later interest, being the item suggested by the chief clerk's letter of acknowledgment, which most logically was interest accumulated on the installment payments over the two-year period consumed in paying up the delinquencies, and under the theory of defendant and its asserted bar of the statute forever waived.

The general rule with reference to the effect of the acceptance of the principal insofar as it affects unpaid interest is stated in 15 Ruling Case Law, section 11, page 13, as follows: "The right to recover interest after the payment of the principal sum due depends upon whether the interest is due by the terms of the contract, or whether it is merely implied and allowed by way of damages in an action for the principal. If interest is due by the terms of the contract, the payment of the principal is no bar to its subsequent recovery, but if it is not due by the terms of the contract, the payment of the principal sum is a bar to recovery." (See, also, 100 A. L. R. 96, for a comprehensive annotation of the subject.)

If I were permitted to apply the general rule in disposing of this assignment, the result in the light of judicial precedent might be different. The contention of the defendant under the general rule might not be sustained, but the legislature in enacting section 8665, supra, has substituted in this jurisdiction the statute for the general rule. In one short sentence the legislature made a plain, unequivocal and unambiguous declaration. It laid down a comprehensive rule with relation to the waiver of interest.

It seems to me that the statute does not require construction or interpretation. However, if it does require such we must be guided by section 10519, Revised Codes, which provides: "In the construction of a statute * * * the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted." This statutory rule has been universally recognized by this and other courts in the construction of statutes, and I think is of binding effect in this instance.

There is nothing in section 8665, supra, that limits the effect of the provision to any specific class of claims or obligations. It is general in its terms, and to impose a limit so as to exclude judgments or obligations reduced to judgment would be to insert what has been omitted in derogation of the last mentioned section.

A similar statute, one the provisions of which are of like effect as our own, in the state of Louisiana, was under consideration by the Court of Appeals in the case of *Grennon* v. *New Orleans Public Service, Inc.*, 17 La. App. 700, 136 So. 309, 314. There the court said: "It is not necessary, however, for us to decide whether the interest given by the Act of 1916 is to be treated in the same way as contractual interest is treated in the common-law cases referred to above, or whether it should be analogized to interest in the way of damages. Article 2925 of the Louisiana Revised Civil Code seems to establish in Louisiana a general and comprehensive rule with reference to the waiver of interest, and the language of this article, which is unqualified, indicates that the distinction established by the common-law cases we have referred to is not recognized or applied in Louisiana."

Our statute is stronger and more explicit than that of Louisiana. There the statute (Revised Civil Code, Louisiana Article 2925), only created a presumption. That statute reads: "The release of the principal, without any reserve as to interest, raises

the presumption that it also has been paid, and operates a release of it.''

Here plaintiff asserts that the release of the interest by operation of the statute would be in violation of section 39, Article V of our Constitution, which provides: ''No obligation or liability of any person, association or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the legislative assembly; nor shall such liability or obligation be extinguished, except by the payment thereof into the proper treasury.''

·To give this provision the effect that is claimed for it by the state would be equivalent to saying that no statute of limitations can run against the state wherein any obligation due the state is involved, and this in spite of any derelictions or actions of state officials. To illustrate: In this case the defendant pleaded the statute of limitations as to the judgment, and pointed out that section 9043, Revised Codes, provides that certain enumerated sections of the statute apply to actions brought in the name of the state in the same manner as actions by private parties. If such construction is put upon the constitutional provision mentioned, then the plea of the statute of limitations as to the time of the institution of this action could not in any event prevail.

Again, under another assignment of error by defendant it is asserted that the complaint was defective in that it did not plead present ownership of the judgment. This likewise should be of no importance under such construction. Indeed, it would seem that if the far-reaching construction contended for by the state is to be given to the constitutional provision, no rights could be lost to the state in any manner. In fact, statutes of limitations, failure to properly plead, and all of the generally recognized factual or procedural deficiencies would be without effect in a case against the state. It is my belief that the constitutional provision mentioned never was intended to have any such comprehensive effect. It was designed and adopted to pre-

vent voluntary compromise, postponement or remission of obligations due the state, and never was designed to save the state harmless in any and all contingencies.

While section 8665, Revised Codes, is not, strictly speaking, a statute of limitation in the usual sense, i. e., it does not set up an arbitrary time limitation, nevertheless it does erect a bar or barrier to an action after the occurrence of an event. In effect, then, it is a statute of limitation. Long ago this court held a statute of limitation applicable to a tax demand, on the theory that it was not a statute of release or liquidation, but only affected the remedy and not the right. In that opinion section 39, Article V of the Constitution was under consideration. (*Board of County Commrs.* v. *Story*, 26 Mont. 517, 69 Pac. 56.)

More persuasive, however, is the theory adopted in the recent case of *State ex rel. Sparling* v. *Hitsman*, 99 Mont. 521, 44 Pac. (2d) 747. There we had under consideration a statute which authorized the payment of delinquent taxes without penalty and interest,—in other words, a statute which authorized the remission of penalty and interest. It was held upon modern and well-reasoned authority that interest is penalty, and that penalties are no part of a tax obligation, and, hence, that the authorization by the legislature of the remission of penalty and interest was not prohibited by the constitutional provision. While the conditions with relation to section 8665, supra, are somewhat different from those of the *Sparling Case,* the principle is manifestly the same.

The fact that the matter has been reduced to judgment does not affect the principle. An examination of the record in the original action in which the judgment was obtained discloses that the case did not involve a controversy over the amounts due for the tax, but the litigation was conducted as a test of the law upon which the taxes were based. The liability was assumed if the law was good. The action was then in reality, not one to collect a legal tax when due, but to ascertain if any tax at all had been legally imposed. The law being upheld, the judgment for the amount due thereunder followed as a necessary legal consequence.

The character of the obligation was not changed although the form thereof may have been. As I have shown, the state still proceeded to collect the tax as such, rather than to collect the amount of the judgment, and did collect the whole thereof, together with most of the subsequent accrued interest. There can be no doubt about the general rule that the effect of a judgment is to merge the cause of action (15 R. C. L., sec. 236, p. 782); but the question of merger in a given instance depends upon the intention of the parties (id., sec. 238, p. 783). In section 242, just following the last cited sections, it is said: "Even when the evidence of a debt is merged by a judgment the character of the debt remains unchanged." (See, also, *Gibson* v. *Green's Admr.*, 89 Va. 524, 16 S. E. 661, 37 Am. St. Rep. 888.) It then seems beyond question that, if effect is to be given to the principles laid down in *State ex rel. Sparling* v. *Hilsman*, supra, and to the intentions of the parties as evidenced by their actions, section 39, Article V of the Constitution does not apply to render section 8665, Revised Codes, ineffective as a bar to the remission of the interest by operation of law.