Josefina ZENT, Plaintiff and Appellee,

v.

Ira ZENT, Victor Woeste, Mary A. Zent
and the Zent Trust, Defendants
and Appellants.

Civ. No. 9594.

Supreme Court of North Dakota.

June 18, 1979.

Rehearing Denied July 11, 1979.

William R. Mills, Bismarck, for plaintiff and appellee.

Chapman & Chapman, Bismarck, for defendant and appellant Ira Zent; argued by Daniel J. Chapman, Bismarck.

Lawrence A. Dopson, Vogel Law Firm, Mandan, for defendants and appellants Victor Woeste, Mary A. Zent, and the Zent Trust.

PEDERSON, Justice.

Ira Zent, as an individual, Mary A. Zent, as an individual, and Victor Woeste and Ira Zent as trustees of the Zent Trust, appeal from a judgment directing them to convey certain land and awarding damages to Josefina Zent. We reverse the judgment in part and remand for further proceedings.

In 1963 Ira purchased 960 acres of land in Adams County for the sum of $33,600.00 on a contract for deed from his parents, Ray Zent and Mary A. Zent. Josefina was, at that time, married to Ira. In March 1969, Ray Zent died and the final decree of distribution of his estate, in accordance with his will, directed that his equity in the contract for deed be conveyed to the Ray Zent Trust. Victor Woeste and Ira Zent were designated as co-trustees. The property was ordered to be held by the Trust for the benefit of Mary A. Zent.

Under the contract for deed, Ira was obligated to make annual payments of $1,500.00 on the principal, plus 4% annual interest on the outstanding balance, during the years 1963 through 1982. In 1982 any remaining balance of the purchase price was payable to the Zent Trust and Mary A. Zent.

The case was tried to the court without a jury and the trial court made a finding that, at the time Ray Zent's interest in the contract for deed was conveyed to the Zent Trust, $32,100.00 remained unpaid on the contract. The trial court further found that, after the equity in the contract for deed was transferred to the Trust, Ira had failed to make fourteen required payments on the contract and was in arrears in the total amount of $21,000.00. The court found that interest payments had been made in 1972 and 1973, leaving a balance of interest due in the amount of $1,972.00 as of August 1978. The court also found that from 1973 through 1978 Ira received annual rents from the property totaling $43,200.00.

In April 1973, Ira and Josefina were divorced by a decree of the district court of Burleigh County. The decree directed Ira to maintain all payments on the contract for deed in order to prevent a default. The judgment provided that upon payment being made in full, an undivided two-thirds interest in the land would vest in Ira and an undivided one-third interest would vest in Josefina. The decree further provided that in the event Ira defaulted on any of the terms of the contract for deed, Josefina would have the option to pay the balance remaining on the contract and she would be entitled to receive full title to all of the land. These provisions of the divorce decree were in exact accordance with a settlement agreement entered into by Ira and Josefina shortly before their divorce was granted.

Because Ira failed to make payments on the contract, Josefina, in February 1977, gave notice of her election to exercise the option to make payment in full and receive full title to all of the land. Ira, individually and as a trustee, resisted Josefina's attempt on the ground that a default had not been declared under the contract and, accordingly, Josefina's right and option under divorce decree had not matured. Victor Woeste, as a trustee, also resisted on the ground that Ira had not been declared to be in default under the contract for deed. Josefina then initiated this suit in Adams County, where Ira resides and where the land is located, to enforce her option to purchase the land and to compel conveyance to her.

The trial court held that Ira was in default and that Ira, together with Victor Woeste and the Zent Trust, had used wilful

delaying tactics to prevent Josefina from obtaining title, and that, because of this wrongful delay, Josefina was damaged in the amount of $14,400.00. The trial court further held that Josefina was entitled to receive full title to the land, subject to reservations and easements of record, upon payment of the balance due in principal and interest, less the $14,400.00 in damages.

The issues on this appeal are:

(1) Does the Adams County District Court have jurisdiction to enforce and interpret a divorce decree rendered by the Burleigh County District Court?

(2) What are Ira's and Josefina's respective interests in the land?

(3) Does Josefina have a present cause of action to enforce the provisions of the divorce decree which grants her the option to purchase the land upon Ira's default in making payments?

### I.

Ira asserts that the Adams County District Court did not have jurisdiction in this action because it involves the interpretation and enforcement of a divorce judgment rendered in the Burleigh County District Court.

To determine whether the Adams County District Court had jurisdiction, it is necessary to examine § 103 of the North Dakota Constitution. Pursuant to § 103, the district courts are invested with original jurisdiction over all causes of action both at law and at equity. Our court has defined the term "jurisdiction" as the authority which a court has to decide matters that are litigated before it or to take cognizance of matters presented in a formal way for its decision. *Schillerstrom v. Schillerstrom*, 75 N.D. 667, 32 N.W.2d 106 (1948). Except as otherwise provided in our constitution, the district court "has power to determine all controversies or questions of difference which can possibly be made the subject of civil action." *Schillerstrom, supra*, 32 N.W.2d at 123.

We have recognized that an action to enforce a judgment constitutes a separate controversy and is appropriately before the court under § 103 of the North Dakota Constitution. See *Osborne v. Lindstrom*, 9 N.D. 1, 81 N.W. 72 (1899). A suit to recover on a judgment is a different cause of action than that upon which the original judgment was rendered, even if the purpose of the suit is to revive the judgment. See *Milwaukee County v. White*, 296 U.S. 268, 275, 80 L.Ed. 220, 56 S.Ct. 229 (1935); *State v. Hart Refineries*, 109 Mont. 140, 92 P.2d 766 (1939). A suit to recover on a judgment is transitory in nature and can generally be brought wherever the requisite jurisdiction over the defendant can be obtained. See *Thomas v. Thomas*, 14 Cal.2d 355, 360, 94 P.2d 810 (1939). Because an action to enforce a judgment is a separate controversy, it cannot be used to relitigate issues which were addressed in a prior proceeding. Except for matters over which the court has continuing jurisdiction when there are changed conditions, a divorce decree is final as to all the issues litigated in the divorce suit. *Albrecht v. Albrecht*, 120 N.W.2d 165, 167 (N.D.1963).

Ira cites two cases in support of his argument that the Adams County District Court does not have jurisdiction in this matter. Ira asks us to apply our holding in *King v. King*, 59 N.D. 688, 231 N.W. 846 (1930), a case in which we held that a judge of the Fifth Judicial District assigned to determine a divorce matter in the Second Judicial District, did not have continuing jurisdiction to modify the decree after he had returned to the Fifth Judicial District. We reasoned that the jurisdiction to modify a divorce decree was in the district court which renders the decision, not in a particular judge who tried the case.

In this case, Josefina did not request the Adams County District Court to modify or change the Burleigh County decree in any respect. Rather, she commenced an action to enforce certain provisions of the decree in a new and separate action.

The second case that Ira cites in support of his argument that the Adams County District Court is without jurisdiction is *Enderlin State Bank v. Jennings*, 4 N.D.

228, 59 N.W. 1058 (1894). In *Enderlin*, this court held that one district judge does not have power to review the decision of another district judge. A judge of the Fourth Judicial District had denied a motion to set aside a warrant of attachment and the case was subsequently transferred to the Fifth Judicial District where the motion was renewed on the same facts and improperly granted by that court.

It is well-settled that an order by one district judge cannot be circumvented by commencing a second action on the same facts in a different county. *Knapp v. Minneapolis, St.P. & S.S.M.Ry. Co.*, 43 N.D. 291, 173 N.W. 945 (1919). Neither *Knapp* nor *Enderlin* are applicable in the instant case. As we have discussed above, the Adams County District Court action is not based upon the same facts and circumstances as those litigated in the earlier Burleigh County District Court proceeding. Although the district court in which an action is litigated has continuing jurisdiction to modify its judgment in a divorce action upon a showing of changed circumstances, *Nastrom v. Nastrom*, 262 N.W.2d 487, 492 (N.D.1978), it does not have exclusive jurisdiction over all subsequent new causes of action that may be commenced to enforce or interpret the original decree.

We thus conclude that the Adams County District Court appropriately exercised jurisdiction in this action.

## II.

The next issue to be resolved is the nature of the parties' interests in the land.

Under a contract for purchase of real property, the purchaser is generally regarded as the beneficial owner in equity while the vendor holds legal title in trust for the purchaser. *Woodward v. McCollum*, 16 N.D. 42, 111 N.W. 623, 626 (1907). The relationship between the installment vendor and his purchaser is essentially one of secured creditor and debtor and, for all practical purposes, the purchaser is regarded as owner and generally has the right to possess and use the property. See *Renner v.*

*Crisman*, 80 S.D. 532, 127 N.W.2d 717, 719 (1964). The vendor holds legal title as security for the payment of the entire purchase price. See *Thompson Yards v. Bunde*, 50 N.D. 408, 196 N.W. 312 (1923); *Lee v. Shide*, 69 N.D. 541, 288 N.W. 556, 557 (1939).

The contract for deed entered into by Ira and his parents is an executory installment contract for purchase. It requires Ira to make payments of $1,500.00 per year from November 1963, the date of execution, until November 1982, at which time the final installment and the entire balance is payable. The contract places Ira in possession and entitles him to receive all rental and profit from the land. Full title in fee simple does not vest in Ira until the entire purchase price is paid.

Pursuant to the contract for deed, Ira holds a present beneficial interest in the land. Pursuant to the divorce decree, Ira and Josefina were each awarded an interest in the land. In a divorce action, the district court has authority to consider and distribute the property of either party, regardless of the source of title. *Bellon v. Bellon*, 237 N.W.2d 163 (N.D.1976). Under the decree, Josefina was granted a one-third undivided interest and Ira was awarded a two-thirds undivided interest. Ira's two-thirds interest was subject to forfeiture to Josefina by his default and her exercise of the option. Ira and Josefina were made tenants in common by the decree. See, generally, 86 C.J.S. Tenancy in Common § 4, et seq., and § 47–02–08, NDCC.

## III.

Ira contends that he is not in default under the contract for deed because the Zent Trust and Mary A. Zent have neither demanded that he make payment nor otherwise declared him to be in default. He strenuously argues that he cannot be in default under the divorce decree when he has not been declared to be in default under the contract for deed.

The contract for deed provides in relevant part:

"In case of the failure of . . . [Ira Zent] to make either of the payments or interest . . . or perform any of the covenants on his part hereby made and entered into, then the whole of said payments and interest shall *at the election of* . . . *[the Zent Trust and Mary A. Zent]* become immediately due and payable, and this Contract shall *at the option of* . . . *[the Zent Trust and Mary A. Zent]* be forfeited . . . by giving to . . . [Ira Zent] thirty days' notice in writing of the intention of . . . [the Zent Trust and Mary A. Zent] to cancel . . . this Contract, setting forth in said notice the amount due upon said Contract, and the time and place, when and where, payment can be made by . . . [Ira Zent]." [Emphasis supplied.]

There is no question that if Ira fails to make timely payments, the Zent Trust and Mary A. Zent can elect to declare the entire payments due and payable, and can, at their option, serve Ira with an intent to cancel the contract upon thirty days' notice in writing.[1]

The question here is whether Ira must be declared to be in default by the Zent Trustees before he can be found in default under the divorce decree. The divorce decree reads in part:

"It is hereby ordered, adjudged and decreed that the said Ira Zent maintain all payments on said Contract for Deed so as to prevent default under the terms and provisions thereof . . . ."

"It is further ordered, adjudged and decreed that should Ira Zent default in any of the terms of said Contract for Deed, then, and in that event, the said Josefina Zent shall have the right, privilege and option to obtain financing with respect to said Contract for Deed, pay off the balance due and owing under said Contract for Deed, and thereafter be entitled to receive title to all of the lands covered by the Contract for Deed in her own right."

When interpreting a judgment, our court must endeavor to bring all of it into harmony by giving a fair and reasonable construction to all of its provisions. The interpretation of a judgment presents a question of law for the court. *Henry S. Grinde Corporation v. Klindworth*, 77 N.D. 597, 44 N.W.2d 417, 427 (1950).

Josefina apparently believes that her option, under the judgment, to obtain financing and pay the balance of the payments due under the contract for deed accrues whenever Ira fails to make timely installment payments. We disagree.

The term "default," in its contractual sense, has been defined as the nonpayment of an obligation by the party bound to pay, without the consent of the parties having the right to waive payment. See *Arnot v. Union Salt Company*, 186 N.Y. 501, 79 N.E. 719, 721 (1906). When the party entitled to demand payment waives the same by extending the time for payment, either for a definite or indefinite period of time, the persons bound by the obligation cannot be said to be in default. See, generally, Words and Phrases, 11A at 261; *Arnot, supra*, 79 N.E. at 722–723; *Duffy v. Egeland*, 26 N.D. 135, 143 N.W. 350, 352 (1913); *Fargusson v. Talcott*, 7 N.D. 183, 73 N.W. 207 (1897).

If we were to adopt Josefina's interpretation of the judgment, we could reach an unreasonable conclusion. Under Josefina's theory, if Ira had made all payments but one, Josefina could declare a default and elect to exercise her option to acquire the whole land by paying the balance. The judgment expressly requires Ira to main-

---

1. Under the law in effect at the time the contract was executed, § 32–18–04, NDCC, Ira would have a period of one year after the service of a notice of cancellation had been served upon him in which to perform the conditions or comply with the provisions upon which the default occurred. Notice of cancellation is not necessary under this section where the contract is sought to be terminated by an action brought for that purpose upon the failure of the purchaser to perform. In either event, the Zent Trust and Mary A. Zent could not both cancel the contract for deed and recover the purchase price. See *Vail v. Evesmith*, 62 N.D. 99, 241 N.W. 719 (1932).

tain payments in order to prevent a default under the terms and provisions of the contract for deed. There is nothing in the judgment to indicate that Ira would forfeit his interest at Josefina's option solely because of his failure to make timely payments under the contract. The language of the judgment appears to protect Josefina's interest from being forfeited to the Zent Trust and Mary A. Zent by a default by Ira, collusive or otherwise. We note, and the trial court was aware, that Ira was, at the time of the divorce decree, considerably in arrears under the contract for deed. The judgment awarding the divorce does not indicate that the trial court considered that a default had already occurred. A reasonable interpretation of the judgment is, accordingly, that Josefina's option to pay the balance of the debt and obtain full title to the land accrues only in the event that the Zent Trustees and Mary A. Zent declare Ira in default.

Because Josefina's option to purchase the land has not, therefore, matured, she does not presently have an action to compel the Zent Trustees and Mary A. Zent to convey the land to her upon her payment of the balance due, nor is she entitled to damages.

We recognize that a possibility exists that the Zent Trustees and Mary A. Zent may extend the time for payment of the balance of the purchase price indefinitely, thereby preventing Josefina from ever acquiring even the one-third interest in the land awarded to her in the divorce decree. Any action of that nature on the part of the Zent Trustees and Mary A. Zent would render the provisions of the divorce decree a nullity. This court will not place an interpretation on a judgment that permits it to be rendered ineffective and unenforceable by collusion on the part of one of the parties. To avoid this possibility, we construe the judgment to mean that in the event Ira is declared to be in default by the Zent Trustees and Mary A. Zent, or if Ira fails to tender the entire balance due on November 1, 1982, Josefina has then an immediate option to acquire all of the land by paying the balance of the purchase price.

The divorce decree provides that "any rentals paid with respect to the use of the lands shall first be applied as payments on the Contract for Deed, and such rentals as paid shall be considered the income of Ira Zent for tax purposes." In its findings of fact, the trial court stated that Ira had received rentals from the property for the years 1973 through 1978 in the total amount of $43,200.00, and that none of this amount was applied to the contract for deed. The trial court further found that Ira had failed to make fourteen payments on the contract and was in default in the amount of $21,000.00 in the principal amount due and $1,972.00 in interest payments due under the contract. Ira does not assert that these findings are clearly erroneous under Rule 52(a), NDRCivP. See *In re Estate of Elmer*, 210 N.W.2d 815 (N.D.1973). We must therefore assume that the findings are undisputed and are an accurate determination of the amount of rentals received for the land. Had Ira complied with the express provisions of the divorce decree, a substantial portion of the remaining balance on the principal, and the interest, would have been paid.

A party recovering a judgment ordinarily has a right to proceed to enforce it. See *Dickey v. Kaiser Aluminum and Chemical Sales, Inc.*, 286 F.2d 137 (5th Cir. 1960). The jurisdiction of a court to enforce its decrees is coextensive with its jurisdiction to determine the rights of the parties to the controversy. *First Nat. Bank of Waseca v. Paulson*, 69 N.D. 512, 288 N.W. 465, 472 (1939).

Here, Josefina has the right to seek enforcement of the provisions of the divorce decree requiring Ira to apply the rental from the land to the payments due, plus interest, under the contract for deed in order to protect the cotenancy interest granted to her by the judgment. As a cotenant, she also has an appropriate action for an accounting for any amounts received by Ira for rental of the property and is entitled to one-third of the rental which Ira has received, after he has first applied the rents to the installments payable on the contract for deed.

For the reasons set forth above, we reverse that portion of the judgment awarding Josefina damages and allowing her, at this time, to exercise the option of acquiring all of the land by paying the balance due under the contract for deed. We remand so that appropriate action may be taken by the trial court requiring Ira to apply all rental payments that he has received subsequent to the divorce toward the balance of the payments and interest due under the contract, and for an accounting of all rentals which he has received, and such other matters as may be appropriately raised in the interest of justice.

Costs on appeal are awarded to Josefina, the Zent Trust, and Mary A. Zent against Ira Zent, individually.

ERICKSTAD, C. J., and PAULSON, SAND and VANDE WALLE, JJ., concur.